IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., | **No. C 11-5450 RS** |
| Plaintiff, | **ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| AURORA MANALASTAS SELDNER, *doing business as* AURORA'S RESTAURANT, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff J&J Sports Productions, Inc. seeks default judgment against defendant Aurora Manalastas Seldner, doing business as Aurora's Restaurant. J&J licenses the right to broadcast pay-per-view sports entertainment in commercial establishments. It contends that on November 13, 2010, Seldner exhibited "'Tactical Warfare': Manny Pacquiao v. Antonio Margarito, WBC Light Middleweight Championship Fight" on a television in her restaurant to approximately 50 patrons, without obtaining a license and paying the requisite fee to J&J.  Because J&J has established the

right to have default judgment entered in its favor, its motion will be granted, although statutory damages will be awarded in an amount less than requested.

## II. BACKGROUND

J&J employs investigators to police against unauthorized (and unpaid) exhibitions in commercial establishments of pay-per-view sports and entertainment programming to which J&J holds licensing rights. J&J's investigator, Michael Joffee, has submitted an affidavit describing his observations upon visiting Aurora's Restaurant operated by defendant Seldner. Joffee declares he observed part of the Program being shown on one television in the establishment. Joffee conducted three separate headcounts, observing just over 50 patrons present each time, in a room with a capacity of approximately 50. There is no evidence that the bar advertised or promoted the availability of the Program, or that it imposed a cover charge for admission.

The Program apparently was available both through satellite television services and cable television providers. See Complaint, Count I, alleging violation of 47 U.S.C. § 605 (prohibiting unauthorized interception of satellite programming) and Count II, alleging violation of 47 U.S.C. § 553 (prohibiting unauthorized interception of cable programming). There is no evidence as to which of the two Seldner utilized to obtain the Program. J&J asserts that the Program could not have been mistakenly, innocently, or accidentally intercepted and shown.

Had Seldner obtained a license to exhibit the Program at the restaurant, the fee would have been $2200. J&J's claim for conversion therefore seeks damages in that amount. This is not the first time Seldner has exhibited unauthorized pay-per-view boxing at her restaurant or the first time that she has failed to appear and defend. *See J&J Sports Productions, Inc. v. Seldner*, C 10-5137 TEH (default judgment entered July 6, 2011).

## III. STANDARD

Following entry of default, courts are authorized to grant default judgment in their discretion. See Fed. R. Civ. P. 55; *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980). In

2

exercising its discretion, the factors the court may consider include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except for those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

## IV. DISCUSSION

In this case, the *Eitel* factors weigh in favor of granting J&J's motion for default judgment. The allegations in the complaint, taken as true, and further supported by the evidence submitted with the motion, establish that Seldner displayed the Program in a commercial establishment without authorization and payment of the requisite fee. Seldner was given notice of this action, and knew or should have known that she had an obligation to file a response. Under these circumstances, the policy favoring decisions on the merits must yield to J&J's right to a judicial determination of its claims.

Neither the complaint (the claims of which are alleged in the alternative), nor the declarations submitted with the motion, however, establish whether Seldner intercepted a cable signal or a satellite signal. Indeed, J&J's motion expressly acknowledges that it has no information as to the method of interception. Thus, while J&J has established that Seldner wrongfully intercepted and exhibited the Program, and presumably did so in violation of *either* 47 U.S.C. § 605 *or* 47 U.S.C. § 553, there is an insufficient basis to conclude with certainty *which* of the two statutes would support an award of statutory damages.[1]

---

[1] J&J's motion seeks statutory damages only under § 605, but contains no explanation why it chose to pursue its claim under that section and to abandon the alternatively-pleaded claim under § 553. Nothing in the motion suggests J&J has learned since filing the complaint which section actually applies; as noted, J&J expressly admits it lacks such information.

In cases similar to this one, J&J and other holders of pay-per-view licensing rights have sometimes been granted default judgments including statutory damages, by orders not expressly addressing this issue. When courts have explicitly questioned the adequacy of a plaintiff's showing as to the means by which a pay-per-view signal was intercepted, they have sometimes been willing to presume it more likely to have been through a violation of § 553, because "a cable box is hidden more easily than a satellite dish." *G & G Closed Circuit Events, LLC v. Vo*, 2012 WL 899955, at *2 (N.D. Cal. 2010); *J & J Sports Prods., Inc. v. Guzman*, 2009 WL 1034218, at *2 (N.D.Cal. 2009). That approach is unsatisfactory here, given that J&J is not seeking damages under § 553.

Nevertheless, § 605 and § 553 each provide a discretionary range of possible damage awards, and those ranges are overlapping between the sums of $1000 and $10,000.[2] J&J points to numerous cases from various districts involving default judgments against defendants for unauthorized exhibition of pay-per-view programming where courts have awarded statutory damages up to the maximum, including, in some instances, "enhanced" damages. J&J urges the same result here. J&J acknowledges that other courts have declined to enter substantial awards, and argues "that those cases that award nominal damages are a major reason why there have been little to no decrease in piracy."

J&J, however, has not shown that there is any threshold amount that creates a deterrent effect, or that default judgments ever significantly deter "piracy." The inference J&J seeks to draw—that nominal damages awards in default judgments perpetuate continued misappropriation—is undermined by its citation to many cases awarding statutory maximums, which apparently likewise have proven ineffective at deterring the conduct.

Nevertheless, were J&J awarded under its conversion claim only the $2200 license fee Seldner avoided paying, it is self-evident that defendants would have no disincentive against simply

---

[2] The range under § 605 is from $1000 to $10,000, with the potential of enhanced damages up to $100,000 for a willful violation committed for commercial advantage, or a reduction to as low as $250 where, "the violator was not aware and had no reason to believe that his acts constituted a violation." Under § 553, the basic range is from $250 to $10,000, with potential enhancement up to $50,000, or reduction down to $100.

continuing to exhibit pay-per-view programs without authorization and allowing default judgments to be entered when a plaintiff learns of it and pursues the matter. Additionally, in light of Seldner's status as a "repeat offender," an award greater than that recently entered in another case brought by J&J[3] is warranted. Accordingly, under all the circumstances here, an award of statutory damages in the amount of $7500 is appropriate. Any uncertainty as to whether Seldner in fact violated § 605 is immaterial in light of the fact that a statutory award in the same amount is equally appropriate in the event she actually violated § 553. Her failure to appear and defend this action cannot be permitted to preclude J&J from being awarded any statutory damages, when it has shown that the interception of the Program necessarily violated one of the two statutes.

J&J has not shown, however, that an award of "enhanced" damages under either statute is warranted. Nor has it shown that it is entitled to recover actual damages under its conversion theory *in addition* to statutory damages. *See* § 605(e)(3)(c) ("at the election of the aggrieved party . . . [it] may recover the actual damages . . . *or* . . . statutory damages . . . ."). Judgment will therefore be entered in the amount of $7500.

### V. CONCLUSION

The motion is granted. A separate judgment in plaintiff's favor will issue.

IT IS SO ORDERED.

Dated: 7/26/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[3] *See J&J Sports Productions, Inc. v. Andrade*, C 11-4592 RS.